## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A COMPLAINT AND ARREST WARRANT

I, Edgar Koby, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I am a Special Agent of the Federal Bureau of Investigation. The information contained in the complaint is based upon my personal knowledge, as well as information obtained from other sources, including: (a) statements made or reported by various witnesses with knowledge of relevant facts; (b) my review of publicly available information; and (c) my review of evidence, including business records, bank records, and other documents and records. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where the contents of documents and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

2.  Based on the facts set forth in this affidavit, there is probable cause to believe that BRIANNA DIXON has committed violations of Title 18, United States Code, Section 1343 (Wire Fraud).

### PROBABLE CAUSE

*Background on Pertinent Entities and Individuals*

3.  At all times relevant to this Complaint, BRIANNA DIXON was a resident of Cleveland, Ohio, in the Northern District of Ohio.

4.  Bank 1 was a federally insured financial institution headquartered in North Carolina. Bank 1 had branch offices and automated teller machines ("ATMs") located in the Northern District of Ohio. Bank 1's servers were located in the State of Texas.

5.  The Social Security Act of 1935 initiated the federal and state unemployment insurance ("UI") system. The UI system provided temporary financial assistance to eligible lawful workers who were unemployed through no fault of their own. The purpose of the UI system was twofold: to lessen the effects of unemployment through direct cash payments to laid-off workers; and to ensure that life necessities were met weekly while the worker sought employment.

6.  State unemployment systems and benefits were joint federal and state enterprises administered by the State Workforce Agency ("SWA") of a given state and largely financed by taxes on private employers located in the state. SWAs administered UI programs in accordance with federal laws and regulations. Each state set its own additional requirements for eligibility, benefit amounts, and length of time benefits were paid. Generally, UI weekly benefit amounts were based on a percentage of a lawful worker's earnings over a base period. When state unemployment benefits were exhausted, the U.S. Department of Labor ("DOL") could supplement them with federal funds.

7.  The California SWA was the Employment Development Department ("EDD").

8.  Because of the COVID-19 pandemic, EDD's ability to provide UI benefits was expanded. On or about March 27, 2020, the President signed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act into law. The CARES Act expanded EDD's ability to provide UI for many workers impacted by COVID-19, including for workers who were not ordinarily eligible for UI benefits. The CARES Act provided for new programs: Pandemic Unemployment Assistance ("PUA"); Federal Pandemic Unemployment Compensation ("FPUC"); and Pandemic Emergency Unemployment Compensation ("PEUC"), among others (collectively, "Pandemic UI").

9. PUA provided for up to 39 weeks of benefits to individuals who were self-employed, seeking part-time employment, or otherwise would not qualify for regular or extended benefits under state or federal law or PEUC under section 2107 of the CARES Act. Coverage included individuals who exhausted all rights to regular UI benefits or extended benefits under state or federal law or PEUC. Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker qualified for PUA benefits administered by EDD if the individual previously performed such work in California and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason. The eligible timeframe to receive PUA was from weeks of unemployment beginning on or after January 27, 2020, through December 31, 2020.

10. FPUC provided individuals who were collecting regular UI, PEUC, and PUA with an additional $600 per week from April 5, 2020 (or the next date after the respective state had an established agreement with the federal government), through July 31, 2020.

11. PEUC provided for up to 13 weeks of benefits to individuals who had exhausted regular UI under state or federal law; had no rights to regular UI under any other state or federal law; were not receiving UI under the UI laws of Canada; and were able to work, available for work, and actively seeking work. EDD had to offer flexibility in meeting the actively seeking work requirement if individuals were unable to search for work because of COVID-19, for reasons including illness, quarantine, or movement restriction. The eligible timeframe to receive PEUC was from April 5, 2020 (or the next date after the respective state had an established agreement with the federal government), through July 31, 2020.

12. To obtain Pandemic UI, an individual could apply online through the EDD website, the servers for which were located in the State of California. Claimants answered

various questions to establish their eligibility. Claimants were required to provide personal identifying information, which included their name, mailing address, gender, email, phone number, social security number, and date of birth (collectively, "personal identification information"). Moreover, claimants had to identify a qualifying occupational status and COVID-19-related reason for being unemployed. Claimants could also submit several documents as evidence of their income.

13. EDD used Bank 1 to administer Pandemic UI benefits. If EDD approved the claimant's application, Bank 1 mailed a preloaded debit card to the claimant at the mailing address identified by the claimant on the application. The claimant could change the mailing address with Bank 1 after the claim was approved. Bank 1 thereafter loaded additional benefits on the claimant's card at certain intervals.

### *The Scheme to Defraud*

14. From in or around June 2020 through in or around at least September 2020, in the Northern District of Ohio, Eastern Division, and elsewhere, BRIANNA DIXON and others knowingly devised, and intended to devise, a scheme and artifice to defraud the United States Department of Labor, EDD, and other State SWAs, and to obtain Pandemic UI benefits, money, and property to which she was not entitled from United States Department of Labor, EDD, and other State SWAs by means of false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made.

### *Manner and Means of the Scheme*

15. The manner and means by which DIXON carried out the scheme included, but were not limited to, the following:

    a. DIXON and others knowingly made and caused to be made materially false statements and omissions on Pandemic UI Benefits applications to EDD and other State

SWAs to appear to be eligible to receive Pandemic UI benefits to which they were not entitled, including false statements regarding employment history, residency and other information, and misrepresentations about who was receiving the benefits sought.

   b. DIXON's and others' materially false statements and omissions on the Pandemic UI benefits applications induced DOL, EDD, and other SWAs to issue Pandemic UI benefits to which DIXON and others were not entitled.

   c. Upon receiving the fraudulently-obtained Bank 1-issued debit cards from EDD, DIXON and others made cash withdrawals via Bank 1 ATMs at multiple locations in the Northern District of Ohio using the EDD debit cards, thereby obtaining Pandemic UI benefits they were not qualified or authorized to receive.

### *Acts in Furtherance of the Scheme*

16. The acts caused by DIXON in furtherance of the scheme, in the Northern District of Ohio, Eastern Division, and elsewhere, included, but were not limited to, the following:

#### *A.B. Application*

16. On or about August 21, 2020, DIXON and others submitted and caused to be submitted to the EDD an electronic application for Pandemic UI benefits in the name of A.B. The information on the application concerning A.B.'s residence, employment, and income was false.

17. On or about August 26, 2020, DIXON and others caused Bank 1 to send via regular U.S. mail to a residential address in Cleveland, a Bank 1-issued debit card in the name of A.B., which was subsequently loaded with Pandemic UI benefits in the approximate amount of $18,670.

18. From on or about September 3, 2020, to on or about September 23, 2020, DIXON and others withdrew PUA funds from banks located in Mentor, Ohio, and Cleveland, Ohio, using

the Bank 1-issued debit card in the name of A.B., thereby obtaining California Pandemic UI benefits for which they were not eligible and to which they were not entitled, knowing the benefits were obtained under false pretenses.

### *J.E. Application*

19. On or about August 19, 2020, DIXON and others submitted and caused to be submitted to the EDD an electronic application for Pandemic UI benefits in the name of J.E. The information on the application concerning J.E.'s residence, employment, and income was false.

20. On or about August 23, 2020, DIXON and others caused Bank 1 to send via regular U.S. mail to a residential address in Cleveland, Ohio, a Bank 1-issued debit card in the name of J.E., which was subsequently loaded with Pandemic UI benefits in the approximate amount of $17,614.

21. From on or about September 8, 2020, to on or about September 24, 2020, DIXON and others withdrew PUA funds from bank branches and ATMs located in Cleveland, Ohio using the Bank 1-issued debit card in the name of J.E., thereby obtaining California Pandemic UI benefits for which they were not eligible and to which they were not entitled, knowing the benefits were obtained under false pretenses.

*(Remainder of the page intentionally left blank)*

## CONCLUSION

17. Based on the foregoing, I respectfully submit that there is probable cause to believe that BRIANNA DIXON committed wire fraud from on or about June 2020 through at least in or around September 2020, in the Northern District of Ohio, and elsewhere.

*Edgar Koby* signature
Edgar Koby
Special Agent
Federal Bureau of Investigation

This affidavit was sworn to by the affiant by telephone after a PDF was transmitted by email, per Fed. R. Crim P. 4.1, 41(d)(3) on this 4th day of April, 2024 at 4:35 p.m.

The Honorable Jennifer Dowdell Armstrong
United States Magistrate Judge